**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MARIAH LOPEZ,

     Plaintiff,     No. 1:19-CV-1072
              (TJM/CFH)
  v.

CITY OF ALBANY, et al.,

     Defendants.

---

**APPEARANCES:**

Mariah Lopez
c/o Ryan Ramdass
42 Elder Street
Schenectady, New York 12304
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

### I. In Forma Pauperis Application

  The Clerk has sent to the Court a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by plaintiff pro se Mariah Lopez. Dkt. Nos. 1 ("Compl."), 2. After reviewing plaintiff's IFP Application, the Court finds that she may properly proceed IFP. See Dkt. No. 2.

## II. Initial Review[1]

### A. Standard of Review

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). However, this does not mean the Court is required to accept unsupported allegations devoid of sufficient facts or claims. Pleading guidelines are provided in the Federal Rules of Civil Procedure ("Fed R. Civ. P"). Specifically, Rule 8 provides that a pleading which sets forth a clam for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is

---

[1] Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

2

applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant['s] duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint

3

Plaintiff alleges that defendants City of Albany, Capital Region Transportation Authority, City of Watervliet, Capital District Transportation Authority ("CDTA"), City of Watervliet General Manager Jeremy Smith, and City of Albany County Executive Daniel P. McCoy failed to make alterations to accommodate her disability and retaliated against her. See generally Compl. Plaintiff contends that on July 25, 2019, she boarded a bus operated by CDTA at 13th Street and Broadway in Watervliet, New York. Id. at 6. As she boarded, the bus operator "began making statements challenging the validity of [p]laintiff's Service Animal and status as a Disabled person." Id. Plaintiff "felt harassed, fearful, anxious and eventually . . . traumatized." Id. Plaintiff contends that "the bus operator was motivated to challenge [p]laintiff[']s service animal and status as a disabled person in part because of [her] identity as a Transgender person." Id. at 7. The bus operator instructed plaintiff to either exit the bus or produce documents proving that the dog was a service animal. Id. Plaintiff contends that the bus operator verbally harassed her and threatened to call the police. Id. Plaintiff "repeatedly expressed to the bus operator that [she was] disabled, and that the dog in question [was] indeed a Service Animal under the ADA." Id. Plaintiff states that "[t]he bus operator became more dismissive, cruel[,] and retaliatory as [p]laintiff refused to exit the bus." Id. The bus operator became "agitated and aggressive" and "egg[ed] on other passengers to retaliated against and harass [her]." Id. The bus operator refused to proceed to the next stop until plaintiff exited the bus. Id.

Plaintiff contends that the bus driver's actions and statements to the passengers caused other passengers to become irate. Compl. at 7. Plaintiff alleges that multiple

4

passengers also verbally abused her relating to her need for the service animal. Id. Plaintiff contends that she was "menaced and almost physically assaulted by a passenger, who demanded that [she] produce documents for the operator so that the bus could proceed." Id. At that time, the bus operator called 9-1-1 and "fabricat[ed] a crime (that [ ] [p]laintiff was threatening passengers with a weapon)." Id. at 8. Plaintiff states that the bus driver did not intervene to protect plaintiff from the threatening passenger; instead, other passengers intervened to prevent an attack. Id. "Watervliet Officers and supervisors from CDTA" arrived at the scene, and the bus operator "continued to make false statements to the police and CDTA supervisors" concerning plaintiff allegedly threatening passengers with a weapon. Id. Plaintiff recorded the incident on her phone and via a "popular social media app." Id. She indicates that she felt bullied by the police, and felt as though her "identity as a Disabled individual who is also Transgender impacted how Watervliet police interacted with [her]." Id. The Watervliet Police Department did not take seriously plaintiff's complaint of "criminal level hate-motivated menacing." Id.

The next day, plaintiff again attempted to board a CDTA bus at 13th Street and Broadway in Watervliet. Compl. at 8. The same bus operator arrived and "repeated the same violations of [p]laintiff's rights, this time refusing to even open the bus door in a blatant act of lawlessness and retaliation." Id. Plaintiff states that the passengers "sided with [her] as the operator needlessly stalled by the bus by exiting the bus and choosing to stand with [her]." Id. at 9. The bus operator again called the police and CDTA supervisors, and informed them that plaintiff had threatened the operator with a weapon the day prior. Id. At some point after the

5

Watervliet police officers arrived, an officer stated to plaintiff, "[y]ou threatened the driver . . . that's why you're not getting on . . . ." Id. A non-party CDTA supervisor who identified himself as "Ray" repeated the "defamatory lies posited by the Watervliet police." Id. Plaintiff again recorded the incident. Id.

Plaintiff seeks injunctive relief "to ensure that Disabled People with Service Animals can access CDTA without discrimination, harassment, intimidation, and abuse,"[2] as well as "monetary damages (compensatory and punitive) in an amount still to be determined, to compensate her for her emotional distress and for [d]efendants' blatant violation of her rights as a disabled person." Compl. at 9.

### C. Analysis

Plaintiff seeks to bring this action pursuant to the Americans with Disabilities Act ("ADA"). Title II of the ADA applies to public transportation provided by public entities. 42 U.S.C. § 12131. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id. § 12132. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs

---

[2] On August 31, 2019 United States Senior District Court Judge Thomas J. McAvoy denied plaintiff's application for a temporary restraining order and other injunctive relief based on procedural deficiencies "with leave to renew upon proper papers." Dkt. No. 4 at 4.

6

or activities provided by a public entity." Id. § 12132(2).  A "public entity" is defined as "any State or local government" or an "instrumentality of a State . . . or local government." Id. § 12132(1)(A), (B).  "Title III of the ADA proscribes discrimination against the disabled in public accommodations." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir. 2004).  Title III states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.  Public accommodation includes "[a] terminal, depot, or other station used for specified public transportation." 29 C.F.R. § 36.104.

> To establish a violation under the ADA, [p]laintiff must demonstrate: 1) that she is a 'qualified individual' with a disability; 2) that [d]efendant is subject to the ADA; and 3) that she was "denied the opportunity to participate in or benefit from [d]efendant's services, programs or activities, or was otherwise discriminated against by [d]efendant by reason of her disability."

Nicholas v. City of Binghamton, N.Y., No. 10-CV-1565, 2012 WL 3261409, at *12 (N.D.N.Y. Aug. 8, 2012) (quoting Powell, 364 F.3d at 85).  "An ADA 'plaintiff may base her discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" Lopez v. City of New York, No. 17 Civ. 3014 (VEC) (AJP), 2017 WL 4342203, at *10 (S.D.N.Y. Sept. 28, 2017), report and recommendation adopted, No. 17-CV-3014 (VEC), 2018 WL 1371164 (S.D.N.Y. Mar. 15, 2018) (quoting Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016)).

7

**1. Reasonable Accommodation**

At this early stage in the litigation, the undersigned concludes that plaintiff has adequately pleaded the first element of the ADA reasonable accommodation claim.[3]  A "disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities[4] of such individual[,]" a record of impairment, or being regarding as having such an impairment.  42 U.S.C. § 12102(1).  28 C.F.R. § 36.104 (2011).  "[T]he determination of whether or not a person suffers from a disability under the ADA is an individualized inquiry that does not rest on the mere diagnosis of an impairment."  Robinson v. Purcell Const. Corp., 859 F. Supp.2 d 245, 259 (N.D.N.Y. 2012) (citation omitted).  Courts "are to look to 'the effect of [an] impairment on the lift of the individual, and [i]t is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of impairment . . . . To be 'substantially impaired' from performing a major life activity, plaintiff must have an impairment that 'prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Id. (citations omitted).

Here, plaintiff's complaint is silent as to how her impairments impact "major life activities" as defined by the ADA.  Indeed, the receipt of Social Security disability benefits does not automatically equate to a disability under the ADA.  Robinson, 859 F. Supp. 2d at

---

[3] The undersigned makes no conclusion whether plaintiff's claim could survive a properly-filed dispositive motion.

[4] Major life activities include, inter alia, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  29 C.F.R. § 1630.2(i).

8

259 (quoting Horwitz v. S.G. Stickley, Inc., 20 F. App'x 76, 80-81 (2d Cir. 2001) (summary order). Plaintiff claims that she suffers from post-traumatic stress disorder ("PTSD"), gender dysphoria, and general anxiety, "among other[ ]" disabilities. Compl. at 2. Plaintiff has proffered documentation that she receives social security disability benefits for these conditions, and alleges that she has received such benefits since 2005. See id. at 5, 14, 15. The undersigned concludes, at this early stage, plaintiff has pleaded enough to support her claim that she has a disability as defined by the ADA.

Further, "[w]here an individual has failed to plead an actual disability or record of a disability, she may make a case that she was 'regarded as' disabled under the ADA." Hernandez v. Int'l Shoppes, LLC, 100 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (citation omitted). "An individual is held to be "regarded as" having a disability if he or she is subject to conduct that is unlawful under the ADA, regardless of whether the disability is actual or merely perceived." Id.; see 42 U.S.C. § 12102(3)(A). As such, at this early stage, plaintiff has adequately pleaded the first element. For the second element, the City of Albany, Capital Region Transportation Authority, and CDTA are public entities described under the ADA. See Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth., 342 F. Supp. 2d 160, 163 (S.D.N.Y. 2004) (noting that the defendant transportation authority "concede[d], as it must, that it is [ ] a 'public entity' within the meaning of Title II of the ADA.").

As to the third element, plaintiff seems to set forth a reasonable accommodation theory by alleging that CDTA prohibited her from boarding the bus without proper

documentation for her service animal.  See Compl. at 6-7.  "Under the ADA, a service animal is defined as 'any animal individually trained to do work or perform tasks for the benefit of an individual with a disability.'"  Nicholas, 2012 WL 3261409, at *14 (quoting 28 C.F.R § 36.104).  Additionally, "[t]he work or tasks performed by a service animal must be directly related to the individual's disability."  Id.  Plaintiff alleges that she "requires and owns a service dog to aid in managing the symptoms of her [multiple medical disabilities]."  Compl. at 5.  Thus, as plaintiff contends that her dog aided in managing the symptoms of her PTSD, gender dysphoria, and general anxiety, the Court concludes that, at this early stage, she has adequately pleaded that her dog was a service animal under the ADA.  See Nicholas, 2012 WL 3261409, at *14 (quoting 28 C.F.R § 36.104).  Further, plaintiff contends that the bus operator required plaintiff to produce documents demonstrating that plaintiff's dog was a service animal.  See Compl. at 7.  Federal regulations state that "a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability."  28 C.F.R. § 36.302(c)(1).  Although "[a] public accommodation may ask if the animal is required because of a disability and what work or task the animal has been trained to perform," a public accommodation "shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal."  Id. § 36.302(c)(6).  As such, plaintiff does not appear to have been under an obligation to provide defendants with proof that her dog qualified as a service animal.

Moreover, "[a] 'reasonable accommodation' is one that gives the otherwise

10

qualified plaintiff with disabilities 'meaningful access' to the program or services sought." Henrietta D. v. Bloomberg, 331 F.3d 261, 282 (2d Cir. 2003) (citation omitted).  By denying plaintiff the ability to board the bus with her service dog, defendants City of Albany, Capital Region Transportation Authority, and CDTA deprived plaintiff of access to public transportation.  See Compl. at 6-8.  Accordingly, at this early stage, plaintiff sufficiently sets forth a plausible ADA claim for failure to reasonably accommodate her disability, and it is recommended that plaintiff's claim be permitted to proceed.  The undersigned notes that "[s]ince the standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act," in light of special solicitude, it is recommended that plaintiff's claim also proceed under [Section 504 of] the Rehabilitation Act.  Powell, 364 F.3d at 85 (citing Henrietta D., 331 F.3d at 273).

### 2. ADA Retaliation

Plaintiff seems to suggest that defendants City of Albany, Capital Region Transportation Authority, City of Watervliet, and CDTA retaliated against her because of her disability and status as a transgender person.  See generally Compl.  The elements of a retaliation claim under the ADA or the Rehabilitation Act are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002) (citation omitted).

11

With regard to defendants City of Albany, Capital Region Transportation Authority, and CDTA, as to the first element, plaintiff suggests that she was "seeking reasonable accommodation of [her] disability – [i.e., boarding the bus with her service animal] — which constitutes protected activity under Section 504/ADA." Weixel, 287 F.3d at 149 (citing Muller v. Costello, 187 F.3d 298, 311 (2d Cir. 1999) (noting that a retaliation claim can be based on, inter alia, a request for reasonable accommodation). As to the second element, knowledge of a protected activity, plaintiff alleges that she made defendants aware of her disability due to her requests to board the bus with her service animal. See Compl. at 6-8. As to the third element, adverse action, plaintiff alleges that because of her need to utilize a service animal, an employee of defendants: (1) denied her access to the transportation service on two occasions in July 2019; and (2) made false statements against her to the Watervliet Police and CDTA supervisors, and "fabricat[ed] a crime" that plaintiff had been threatening passengers. See id. Finally, as to the fourth element, plaintiff "allege[s] a causal connection between the retaliatory actions of defendants and [her] efforts to obtain disability accommodation" by demonstrating that the bus operator refused to proceed to the next stop until plaintiff exited the bus or provided documentation at her dog was a service animal. Weixel, 287 F.3d at 149; see Compl. at 7. Thus, the undersigned concludes that, at this early stage, plaintiff sufficiently sets forth a plausible ADA retaliation claim against City of Albany, Capital Region Transportation Authority, and CDTA, and it is recommended that plaintiff's ADA retaliation claim be permitted to proceed.

As to defendant City of Watervliet, the undersigned finds the third element to be a

12

closer question. Liberally construing plaintiff's complaint, plaintiff's suggestion that the City of Watervliet perpetuated the "false allegations" against her insofar as they, through the police officers, permitted the CDTA to keep her off of the bus due to her alleged "threats." See Compl. at 8. As such, in interpreting plaintiff's complaint to raise the strongest argument it suggests, see Kirkland, 760 F.3d at 224, the undersigned concludes that plaintiff has arguably demonstrated that the City of Watervliet took adverse action against her, and that adverse action was causally connected to her attempt to board the bus with her service animal. See Weixel, 287 F.3d at 149. Accordingly, to the extent that plaintiff attempts to set forth an ADA retaliation claim against defendant the City of Watervliet, it is recommended that this claim proceed.

To the extent that plaintiff claims that defendants retaliated against her due to her status as a transgender person, the undersigned finds that this does not state a claim under the ADA. Although plaintiff contends that she suffers from gender dysphoria, plaintiff does not argue or present any facts supporting a conclusion that defendants discriminated against her because of her gender dysphoria. Further, there is no indication that defendants knew of plaintiff's gender dysphoria when they prevented her from boarding the bus with her service animal. See Lopez v. New York City Dep't of Homeless Servs., No. 17-CV-3014 (VEC/OTW), 2019 WL 3531955, at *4 (S.D.N.Y. Aug. 2, 2019), report and recommendation adopted, No. 17-CV-3014 (VEC), 2019 WL 4593611 (S.D.N.Y. Sept. 23, 2019) (demonstrating that the defendant's knowledge of a plaintiff's disability is an element of a failure to accommodate claim). Thus, plaintiff's ADA claim cannot proceed

13

on this basis. Accordingly, to the extent that plaintiff attempts to set forth an ADA retaliation claim against defendants on the basis of her status as a transgender person or her gender dysphoria, it is recommended that this claim be dismissed with prejudice.

Arguably, the complaint suggests that defendants intentionally discriminated against plaintiff because of her gender identity, apart from any disability, which falls outside the gambit of the ADA. See Compl. at 6-8.[5] To the extent that plaintiff alleges a claim of intentional discrimination on the basis of her gender identity, the New York State Human Rights Law, N.Y. EXEC. LAW § 290 et seq. provides that "[i]t shall be an unlawful discriminatory practice for any person, being the . . . agent or employee of any place of public accommodation . . . because of the . . . gender identity . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations[.]" N.Y. EXEC. LAW § 296(2)(a). However, plaintiff fails to plausibly allege that defendants knew of her status as a transgender person, or that they acted to prevent her from boarding the bus because of her gender identity. As such, to the extent that plaintiff attempts to allege that defendants intentionally discriminated against her due to her gender identity, it is recommended that plaintiff's claim be dismissed without prejudice and with opportunity to renew to demonstrate that defendants prevented her from entering the bus due to her

---

[5] To the extent that plaintiff may attempt to bring a Fourteenth Amendment equal protection claim based on her transgender status, the undersigned notes that such claim would fail as CDTA is not a "person" under 42 U.S.C. § 1983. See e.g., James v. Washington Metro. Area Transit Auth., 649 F. Supp. 2d 424, 429 (D. Md. 2009) (holding that the transportation authority was "not subject to claims arising under Section 1983 because it is not a 'person' for purposes of that statute.").

14

gender identity in violation of the New York State Human Rights Law.[6]

### 3. Jeremy Smith and Daniel P. McCoy

"[P]laintiffs may not bring suits for money damages against individual defendants under the ADA." Walker v. City of New York, 367 F. Supp. 3d 39, 52 (S.D.N.Y. 2019) (citation omitted); see 42 U.S.C. §§ 12131-12132 (stating that the ADA prohibits discrimination by public entities, not by individuals). "Instead, 'Title II[, Title III,] and Rehabilitation Act suits for prospective injunctive relief may . . . proceed against individual officers in their official capacity.'" Walker, 367 F. Supp. 3d at 52 (quoting Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)); Fiorica v. Univ. of Rochester, Sch. of Nursing, No. 07-CV-6232T, 2008 WL 907371, at *2 (W.D.N.Y. Mar. 31, 2008) ("In seeking relief pursuant to Title III of the ADA, it is well established that monetary damages are not available to a private plaintiff proceeding under the Act, and that the only remedy available to a private plaintiff under Title III of the ADA is injunctive relief to prevent ongoing discrimination."). Insofar as plaintiff may seek money damages against Jeremy Smith and Daniel P. McCoy under the ADA, these claims must also be dismissed with prejudice. See 42 U.S.C. §§ 12131-12132; Walker, 367 F. Supp. 3d at 52. Although "the ADA could support claims for injunctive relief against individual defendants," Walker, 367 F. Supp. 3d at 52, plaintiff fails to allege causes of action against these defendants or otherwise demonstrate how they discriminated against her. Accordingly, to the extent that plaintiff

---

[6] The Court notes that the exercise of supplemental jurisdiction is permitted under 28 U.S.C. § 1367(a).

may wish to pursue a claim for prospective injunctive relief, it is recommended plaintiff's ADA claims against the individual defendants be dismissed without prejudice and with opportunity to amend to demonstrate how the individual defendants discriminated against plaintiff under the ADA.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for in forma pauperis relief (Dkt. No. 2) be **GRANTED**; and it is

**RECOMMENDED**, that to the extent that plaintiff sets forth an ADA/Section 504 claim against defendants City of Albany, Capital Region Transportation Authority, and CDTA, based a reasonable accommodation theory, such claim proceeds; and it is further

**RECOMMENDED**, that to the extent that plaintiff sets forth a ADA/Section 504 claim against defendants City of Albany, Capital Region Transportation Authority, CDTA, and the City of Watervliet, such claim proceed; and it is further

**RECOMMENDED**, that to the extent that plaintiff attempts to set forth an ADA retaliation claim against defendants on the basis of her status as a transgender person or diagnosis of gender dysphoria, it is recommended that this claim be dismissed with prejudice; and it is further

**RECOMMENDED**, that to the extent that plaintiff attempts to allege that defendants intentionally discriminated against her due to her gender identity in violation of Section 296

16

of the New York State Human Rights Law, these claims be dismissed without prejudice and with opportunity to renew as set forth herein; and it is further

**RECOMMENDED**, that plaintiff's ADA claims against the individual defendants be dismissed without prejudice and with opportunity to amend to demonstrate how the individual defendants discriminated against plaintiff under the ADA; and it is further

**RECOMMENDED**, that to the extent that plaintiff seeks money damages against Jeremy Smith and Daniel P. McCoy under the ADA, these claims be dismissed with prejudice; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be provided thirty (30) days from the date of any order adopting this Report-Recommendation and Order to file an amended complaint limited to claims not otherwise dismissed with prejudice by this Court,[7] and should plaintiff decline to file an amended complaint within that time, the Clerk return the case to the magistrate judge for service of the amended complaint with the unamended claims deemed stricken; and it is

**ORDERED**, that if the District Judge permits an amended complaint and plaintiff files an amended complaint within the time frame set forth herein, the Clerk of the Court is to return the case to the magistrate judge for review of the amended complaint; and it is

---

[7] Any amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice. If accepted by the Court for filing, the amended complaint will supersede and replace the original complaint in its entirety; thus, the amended complaint becomes the operative pleading and the original complaint will no longer be considered. See Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

17

further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[8]

Dated: October 9, 2019
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[8] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).